UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

STEVE HOBSON,

                              Petitioner,                    **<u>MEMORANDUM & ORDER</u>**
                                                             11-CV-3225 (MKB)
            v.

ROSEMARIE WENDLEND, *Superintendent of*
*Eastern Correctional Facility*,

                              Respondent.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Petitioner Steven Hobson, proceeding *pro se*, filed the above-captioned petition pursuant to 28 U.S.C. § 2254, on July 1, 2011, alleging that he is being held in state custody in violation of his federal constitutional rights. (Pet., Docket Entry No. 1.) Petitioner's claims arise from a judgment of conviction following a jury trial in the New York Supreme Court, Suffolk County (the "Trial Court"), on charges of assault in the first degree, criminal use of a firearm in the first degree, and petit larceny. Petitioner was sentenced to concurrent terms of imprisonment of twenty-one years on the assault count, twenty years on the firearm count, and one year on the larceny count.

Petitioner appealed his conviction to the New York Supreme Court Appellate Division, Second Department (the "Appellate Division"). (Petitioner Direct Appeal Brief ("Pet'r App. Br.") 6–21.)[1] While Petitioner's direct appeal was pending, Petitioner filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law section 440.10 ("Section 440"),

---

[1] Respondent submitted documents from the state court record in hard copy, and did not electronically file the state court record. A list of the documents submitted from the state court record is available at Docket Entry No. 13.

with the Supreme Court of New York, Suffolk County (the "440 Court"). (Pet'r Exs. Part 1 at 10–17, Docket Entry No. 1-4.)[2] The 440 Court denied Petitioner's motion. (*Id.* at 1–2.) The Appellate Division denied Petitioner's motion for leave to appeal the 440 Court's decision. (*Id.* at 3.) As to Petitioner's direct appeal, the Appellate Division subsequently affirmed Petitioner's conviction, *People v. Hobson*, 849 N.Y.S.2d 165, 165–66 (App. Div. 2008), and the New York Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision, *People v. Hobson*, 10 N.Y.3d 935, 935 (2008).

Petitioner subsequently filed a second Section 440 motion to vacate his conviction with the 440 Court. (Pet'r Exs. Part 1 at 20–35.) The 440 Court denied Petitioner's motion, and Appellate Division denied leave to appeal. (*Id.* at 4–5.)

Petitioner then filed a writ of error *coram nobis* with the Appellate Division, requesting that the Appellate Division vacate his conviction. (Pet'r Exs. Part 2 at 1–27, Docket Entry No. 1-5.) The Appellate Division denied the writ. *People* v. *Hobson*, 80 A.D.3d 776, 778 (N.Y. App. Div. 2011). Petitioner requested leave to appeal the Appellate Division's denial with the New York Court of Appeals, which request was denied. *People* v. *Hobson*, 17 N.Y.3d 796, 796 (2011).

This timely petition followed. For the reasons discussed below, the Court denies the petition.

## I. Background

### a. Incident and arrest

In the fall of 2004, Petitioner had an "ongoing dispute" with Maurice Brown, which resulted in Maurice coming to Petitioner's home and "trash[ing] it." (Pet'r Exs. Part 1 at 27,

---

[2] Because Petitioner's exhibits are not consecutively paginated, the Court refers to the electronic document filing system (ECF) pagination.

Pet'r Exs. Part 2 at 38–39.)  Petitioner felt that he and his family would remain in danger unless he settled the dispute with Maurice.  (Pet'r Exs. Part 2 at 38–39.)

Petitioner subsequently bought a shotgun from someone that he knew "out in the Hampton Bays," (*id.*), and on October 2, 2004, at approximately 7:23 PM, Petitioner stole a box of shotgun shell for a sixteen-gauge shotgun from a Wal-Mart, located in Riverhead, New York, (Trial Tr. ("Tr.") 44:7–50:6, 383:1–24).  The following day, between approximately 12:30 and 1:00 AM, Petitioner drove to Maurice's home, parked his car nearby, and, carrying a loaded shotgun, waited in a wooded area adjacent to the home.  (Tr. 384:4–17.)  Maurice was sitting in his living room with his friend, Elijah Swan, his girlfriend, Collene Brown, and Collene's daughter, Sharee Pace.  (Tr. 74:22–75:8.)

From the wooded area alongside the home, Petitioner threw rocks at Maurice's car, which triggered the car's alarm system.  (Tr. 75:3, 384:19–22.)  Maurice walked out his house to turn off the alarm and heard a voice coming from the wooded area.  (Tr. 75:20–22.)  When Maurice turned toward the voice, Petitioner shot him in the abdomen.  (Tr. 75:21–76:4.)  The police arrived on the scene at approximately 2:00 AM, after receiving a report of a shooting at Maurice's address.  (Tr. 193:15–18, 230:8–12.)  The police recovered a cigar butt, shotgun shells and a loaded shotgun containing unexpended ammunition from the area surrounding Maurice's home.  (Tr. 201:5–207:25, 232:7–15.)

Detective Michael Sanchez was assigned to the case as lead detective and interviewed Maurice and other witnesses at the hospital.  (Resp't Direct Appeal Brief ("Resp't App. Br.") 2.)  Collene told Detective Sanchez that she heard Petitioner's voice outside of Maurice's home prior to the shooting.  (*Id.* at 3.)  Alexa Brown, Collene's sister, told Detective Sanchez that on her

drive to the hospital to see Maurice she passed Petitioner, who was driving a white Plymouth. (*Id.* at 3.)

On October 4, 2004, a detective from the Suffolk County District Attorney's Office, received a telephone call from Clayton Moltry, a confidential informant known to the office. (*Id.* at 4–5.) Moltry told the detective that Petitioner told him that he shot Maurice, and that he and Petitioner were currently located at a Comfort Inn in Medford, New York. (*Id.* at 5.) At approximately 10:00 AM, the police arrived at the Comfort Inn, arrested Petitioner, and transported Petitioner to the police station, where a detective advised Petitioner of his *Miranda* rights. (*Id.* at 5–6.) Petitioner indicated that he understood his rights and wished to speak to the detective without an attorney present. (*Id.* at 6–7.) Petitioner admitted to stealing ammunition from Wal-Mart, driving to Maurice's house with a loaded shotgun and shooting him. (*Id.* at 7–8; Tr. 382:17–385:22.) Petitioner emphasized that he used "rabbit" shot because he intended to injure Maurice, not to murder him. (Resp. App. Br. 7–9; Tr. 383:19–384:3.)

### b. Indictment and plea negotiations

Petitioner was indicted on charges of assault in the first degree, criminal use of a firearm in the first degree, and petit larceny. (Tr. 7:11–17.)

The indictment accused Petitioner of "[a]ssault in the first degree, committed as follows: [t]he defendant, on or about October 3, 2004, in Suffolk County, with intent to cause serious physical injury to Maurice Brown caused such injury by means of a deadly weapon." (Indictment 2.) Regarding the charge of criminal use of a firearm, the indictment read that "[t]he defendant, on or about October 3, 2004, in Suffolk County, committed a Class B violent felony offense and possessed a loaded deadly weapon, from which a shot, readily capable of producing death or other serious injury may be discharged." (*Id.*) On the petit larceny count, the

indictment accused Petitioner of "steal[ing] property." (*Id.*) The grand jury indicted Petitioner on all counts. (*Id.* at 1–2.)

After Petitioner was indicted, Petitioner received a letter from a staff attorney with the Suffolk County Legal Aid Society, regarding the attorney's advice as to whether Petitioner should plead guilty or proceed to trial. (Pet'r Ex. Part 1 at 18.) In the letter the staff attorney advised Petitioner that because Petitioner was charged with a "violent felony," Petitioner faced a maximum sentence of twenty-five years and a mandatory minimum sentence of eight years of imprisonment, informed Petitioner that his "plea bargain minimum is [five] years determinate state imprisonment," and "vigorously urge[d]" Petitioner to consider the alternative options to proceeding to trial that the attorney previously discussed with Petitioner. (*Id.*) The staff attorney further advised Petitioner that he was under the erroneous belief that his "oral and written statements w[ould] be suppressed at a pre-trial hearing." (*Id.*) Petitioner, however, elected to proceed to trial.

### c. Trial

Before the trial proceedings commenced, the Trial Court assigned a private attorney to represent Petitioner due to "a conflict [that] occurred" between Petitioner and the Legal Aid Society. (Pet'r Exs. Part 2 at 6.) Petitioner's assigned counsel suffered from Tourette's syndrome. (Voir Dire Tr. 91:4–12.)

At trial, the prosecution called a security guard from the Riverhead Wal-Mart, who authenticated photographs and video of Plaintiff stealing sixteen-gauge shotgun shells from the Riverhead Wal-Mart on October 2, 2004. (Tr. 30:22–67:24.) The prosecution called Detective Sanchez, Maurice, Collene, and Pace, who testified to the events of October 3, 2004. (Tr. 68:6–121:11, 121:22–154:17, 158:6–183:23.)

Maurice testified to hearing a voice outside his home immediately prior to the shooting, and stated that "he knew [Petitioner] was outside so I basically told him to stop playing games, come out. And if he was going to shoot, shoot." (Tr. 76:5–9.) Collene testified that she heard Petitioner's voice outside the home immediately prior to the shooting. (Tr. 127:18–128:16.) Alexa testified that on October 2, 2004, the day prior to the shooting, she saw a shotgun in the trunk of Petitioner's car. (Tr. 287:4–288:7.) During Detective Sanchez's testimony, he read Petitioner's confession into evidence. (Tr. 382:17–385:22.)

After the prosecution rested, Petitioner's counsel made a motion to dismiss on the grounds that "the prosecution ha[d] failed to make out a prima facie case beyond a reasonable doubt." (Tr. 465:19–22.) The Trial Court denied the motion. (Tr. 466:9–22.) The defense did not call any witnesses. (Tr. 466:9–22.)

### d.  Jury charge and verdict

At the close of evidence and arguments, the Trial Court issued the jury charge. As relevant here, the Trial Court instructed the jury that:

> the indictment charges the defendant with the crime of criminal use of a firearm in the first degree. Under our law, a person is guilty of criminal use of a firearm in the first degree when he commits any class B violent felony offense and he or she displays what appears to be a pistol, revolver, rifle, shotgun, machine gun, or other firearm.

(Tr. 565:13–21.) As to the assault charge, the Trial Court instructed the jury that a "[d]eadly weapon means any loaded weapon from which a shot readily capable of producing death or other serious physical injury may be discharged." (Tr. 564:9–12.) On July 6, 2005, the jury found Petitioner guilty of assault in the first degree, criminal use of a firearm in the first degree, and petit larceny. (Tr. 584:25–585:17.)

### e. January 2006 Section 440 motion

On January 12, 2006, Petitioner, proceeding *pro se*, moved to vacate his conviction

pursuant to Section 440, claiming ineffective assistance of trial counsel (the "January 2006

Section 440 Motion"). (Pet'r Exs. Part 1 at 10–19.) Petitioner argued that his trial counsel

demonstrated insufficient legal knowledge during several stages of the criminal proceedings and

that his trial counsel's Tourette's syndrome caused his trial counsel to provide deficient

representation. (*Id.* at 13.)

On March 10, 2006, the 440 Court denied the January 2006 Section 440 Motion, finding

that he failed to exhaust the direct appeals process and that sufficient information appeared on

the record to permit adequate review of Petitioner's challenges on direct appeal. (*Id.* at 1–2.)

In the alternative, the 440 Court found that Petitioner's motion failed on the merits because it

was based on the occurrence of unsubstantiated facts. (*Id.* at 1–2.) Petitioner requested leave to

appeal the 440 Court's decision with the Appellate Division. (Pet'r Exs. Part 2 at 34.) The

Appellate Division denied Petitioner's request. (Pet'r Exs. Part 1 at 3; Pet'r Exs. Part 2 at 34.)

Petitioner requested re-argument of the Appellate Division's decision denying his request for

leave to appeal, which was denied. (Pet'r Exs. Part 1 at 3.)

### f. Direct appeal

On December 29, 2005, Petitioner appealed his judgment of conviction to the Appellate

Division on the basis that: (1) Petitioner's Fourth Amendment rights were violated when he was

arrested by police in the hotel room in which he was staying, requiring the suppression of any

and all subsequent statements; (2) there were no exigent circumstances to justify a warrantless

arrest; and (3) the confidential informant who reported Petitioner's location to the police lacked

the ability to consent to a warrantless search and violated Petitioner's Fourth Amendment rights

while acting in the capacity of an agent of the government. (Pet'r App. Br. 6–21.)

On January 22, 2008, the Appellate Division affirmed Petitioner's conviction. *Hobson*, 849 N.Y.S.2d at 165–66. The Appellate Division held that "[t]he warrantless entry of the police was appropriate since the individual sharing the hotel room with Petitioner voluntarily granted the police permission to enter," and "the evidence failed to demonstrate that this individual's actions had been instigated or supervised by the police." *Id.* (citations omitted). Petitioner requested leave to appeal the Appellate Division's decision with the New York Court of Appeals, which was denied. *Hobson*, 10 N.Y.3d at 935.

### g. April 2009 Section 440 motion

On April 16, 2009, Petitioner, proceeding *pro se*, filed a Section 440 motion, seeking to vacate his conviction (the "April 2009 Section 440 Motion"). (Pet'r Exs. Part 1 at 20–35.) Petitioner argued that the Trial Court erred in instructing the jury because the Trial Court's instructions explained the elements of criminal use of a firearm in the first degree for a section of the New York Penal Law under which Petitioner had not been indicted. (Pet'r Exs. Part 1 at 25–27.) Petitioner argued that the Trial Court described the elements of New York Penal Law section 265.09(1)(b), whereas the indictment accused Petitioner of violating New York Penal Law section 265.09(1)(a). (*Id.*) Petitioner also argued that he received ineffective assistance of trial counsel, as his trial counsel failed to object or otherwise challenge the Trial Court's erroneous jury instructions. (*Id.* at 33.)

The 440 Court denied Petitioner's motion. (Pet'r Exs. Part 1 at 4.) The 440 Court found that Petitioner's jury-charge claims were procedurally barred because Petitioner could have raised the claims on direct appeal. (*Id.* (citing New York Criminal Procedure Law § 44.10(2)(c).) In addition, the 440 Court found that Petitioner "failed to show in sufficient detail that his [trial] counsel's actions were not supported by a reasonable strategy and that any error was prejudicial."

(*Id.*)  Petitioner requested leave to appeal the 440 Court's decision with the Appellate Division, which the Appellate Division denied.  (*Id.* at 5.)

### h.    Writ of error *coram nobis*

On December 15, 2009, Petitioner, proceeding *pro se*, filed a writ of error *coram nobis* with the Appellate Division.  (Pet'r Exs. Part 2 at 1–27.)  Petitioner argued that he received ineffective assistance of counsel when his appellate counsel failed to raise meritorious issues on direct appeal, specifically, that he was convicted of a crime for which he had not been indicted due to the Trial Court's erroneous jury instructions, and that he received ineffective assistance of trial counsel when his trial counsel failed to object to the erroneous instructions.  (*Id.*)

The Appellate Division instructed Petitioner "to file . . . a brief on the issue of whether former appellate counsel was ineffective for failing to raise the issue that the trial court's alleged error in charging the jury pursuant to Penal Law [section] 265.09(1)(b) rather than Penal Law [section] 265.09(1)(a) required a new trial."  *People* v. *Hobson*, 899 N.Y.S.2d 657, 658 (App. Div. 2010).  The Appellate Division appointed Petitioner counsel for the purpose of briefing the jury-charge issues.  *Id.*

Despite the limitation imposed by the Appellate Division, Petitioner presented multiple claims in his brief.  (Pet'r Exs. Part 2 at 28–51.)  Petitioner argued that he was denied the effective assistance of appellate counsel when his appellate counsel failed to raise on direct appeal Petitioner's claims of ineffective assistance of trial counsel and erroneous jury instructions, but also argued that his trial counsel was ineffective for failing to inform Petitioner of an alleged plea offer from the state.  (*Id.* at 42–51.)

The Appellate Division denied Petitioner's application for a writ of error *coram nobis*, holding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel."  *Hobson*, 80 A.D.3d at 777 (citation omitted).  The Appellate Division did not address

Petitioner's claim of ineffective assistance of trial counsel based on his trial counsel's alleged failure to present Petitioner with a plea offer from the state. *See id.* Petitioner requested leave to appeal with the New York Court of Appeals, which request was denied. *Hobson*, 17 N.Y.3d at 796.

## II. Discussion

### a. Standard of review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Kernan v. Hinojosa*, 578 U.S. ---, ---, 136 S. Ct. 1603, 1604 (May 16, 2016) (per curiam); *Hittson v. Chatman*, 576 U.S. ---, ---, 135 S. Ct. 2126, 2126 (Jun. 15, 2015); *Johnson v. Williams*, 568 U.S. 289, 292 (2013). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001)); *see also Kernan*, 578 U.S. ---, 136 S. Ct. at 1606; *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Under the 2254(d) standards, a state court's decision must stand as long as "fairminded jurists could disagree on the correctness of the . . . decision." *Richter*, 562 U.S. at 101 (citation and internal quotation marks omitted).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Glebe v. Frost*, 547 U.S. ---, ---, 135 S. Ct. 429, 431 (Nov. 17, 2014) (per curiam) ("As we have repeatedly emphasized, however, circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court [under] § 2254(d)(1)."); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) ("The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the [state] [c]ourt's decision."). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 412–13. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.* In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**b. Petitioner's claims**

Petitioner argues that: (1) the trial court erred in charging the jury when it explained the elements of New York Penal Law section 265.09(1)(b) instead of section 265.09(1)(a); (2) he received ineffective assistance of trial counsel because his trial counsel failed to object to or otherwise challenge the erroneous jury instructions; (3) he received ineffective assistance of trial counsel because his trial counsel failed to inform him of a plea offer from the state; and (4) he

received ineffective assistance of appellate counsel because his appellate counsel failed to make the foregoing arguments on direct appeal. (Pet. 6–11.)

Respondent argues that the Petitioner's claim are procedurally barred because Petitioner failed to raise the claims on direct appeal. (Resp't Opp'n to Pet. ("Resp't Opp'n") 9–28, Docket Entry No. 8-1.) As discussed further below, Petitioner's jury-charge claim and ineffective assistance of trial claims based on his trial counsel's failure to object to the jury charge and inform Petitioner of a plea offer are procedurally barred, and Petitioner's ineffective assistance of appellate counsel claim lacks sufficient merit to overcome the procedural bar.

### i. Procedural bar

Federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state in question." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

When a New York State court rejects a petitioner's claims based on the petitioner's failure to present the claims on direct appeal, such rejection is an independent and adequate ground that bars federal habeas review. *See Golb v. Attorney Gen. of N.Y.*, --- F.3d ---, ---, 2017 WL 3737185, at *5 (2d Cir. Aug. 31, 2017) (holding that "procedural default rules prevent a petitioner from securing [] habeas review of federal claims not properly presented before the state court"); *Clark v. Perez*, 510 F.3d 382, 392–93 (2d Cir. 2008) (holding that the New York State law requirement that a petitioner present his or her claims on direct appeal "constitute[s] an adequate state procedural bar to [a] habeas petition"); *Rollins v. Leonardo*, 938 F.2d 380, 381

(2d Cir. 1991) (holding that the petitioner claims were procedurally barred because the petitioner "fail[ed] to raise the claims on direct appeal").

In addition, "when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996)); *Young v. New York*, No. 11-CV-0110, 2012 WL 6644993, at \*12 (E.D.N.Y. Dec. 20, 2012) ("When a state court relies on an independent and adequate state law ground — such as, in this case, failure to preserve the issue for appeal — federal habeas review is foreclosed. This is true even if the state court rules in the alternative on the merits of petitioner's claims." (citations omitted)).

A federal court may review a claim that is procedurally barred by an independent and adequate state ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536 (2006) ("As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error . . . . The bar is not, however, unqualified . . . . [T]he Court has recognized a miscarriage-of-justice exception." (citations omitted)); *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. 2012) ("When a petitioner 'has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" (quoting *Coleman*, 501 U.S. at 750)).

"The cause requirement is met if some objective factor, external to [the] [p]etitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *see also Maples v. Thomas*, 565 U.S. 266, 280–81 (2012); *Lawson v. McGinnis*, No. 04-CV-2345, 2013 WL 789173, at *9 (E.D.N.Y. Mar. 1, 2013). "There is no doubt that ineffective assistance of counsel can serve a cause to excuse procedural default." *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016) (citing *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000)). But a petitioner is still required to prove that "he suffered actual prejudice as a result of the alleged violation of federal law." *Id.* (citing *Coleman*, 501 U.S. at 750). Prejudice is established when a petitioner is able to show that the alleged errors at trial resulted in "substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Gutierrez*, 702 F.3d at 112 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003).

A fundamental miscarriage of justice arises when a petitioner "is actually innocent of the crime for which he has been convicted." *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2003) (quoting *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002)); *see also McQuiggin v. Perkins*, 569 U.S. ---, ---, 133 S. Ct. 1924, 1927 (May 28, 2013) ("[The] fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))).

### ii. Petitioner's jury-charge claim and ineffective assistance of trial counsel claims are procedurally barred

In addressing Petitioner's January 2006 Section 440 Motion, the 440 Court held that Petitioner's claim that he received ineffective assistance of trial counsel due to his trial counsel's alleged failure to inform him of a plea-offer was procedurally barred because the claim should

have been raised on direct appeal, which appeal was pending at the time. (Pet'r Exs. Part 1 at 1–2.) Petitioner, however, did not raise the plea-offer claim on direct appeal. (*See* Pet'r App. Br. 6–21; Pet'r Exs. Part 2 at 8–9.) In addressing Petitioner's April 2009 Section 440 Motion, the 440 Court held that Petitioner's substantive jury-charge claim and ineffective assistance of trial counsel claim based on his trial counsel's failure to object to the jury charge were procedurally barred because Petitioner failed to raise the jury charge claims on direct appeal. (Pet'r Exs. Part 1 at 2.) Because Petitioner failed to present the plea-offer and both jury-charge claims on direct appeal, the claims are procedurally barred.

However, as noted above, Petitioner's claim that his appellate counsel was ineffective for failing to raise both jury-charge claims and the plea-offer claims, if meritorious, can overcome the procedural bar. The Court therefore considers whether Petitioner's ineffective assistance of appellate counsel claim is sufficient to overcome the procedural bar.

### iii. Petitioner's ineffective assistance of appellate counsel claims lack sufficient merit to overcome the procedural bar

Petitioner argues that he received ineffective assistance of appellate counsel because his appellate counsel failed to raise the plea-offer and jury charge claims on direct appeal. (Pet. 6–11.)

"The Sixth Amendment right to counsel is the right to effective assistance of counsel." *Buck v. Davis*, 580 U.S. ---, ---, 137 S. Ct. 759, 775 (Feb. 22, 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121 (2011). "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at ---, 137 S. Ct. at 775 (citing *Strickland*, 466 U.S. at 687). "Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse

sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (alteration in original) (quoting *Strickland*, 466 U.S. at 689–90); *see also Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010) (stating that the *Strickland* standard is "highly deferential" to eliminate the "distorting effects of hindsight"). The "highly deferential" *Strickland* standard is made "doubly so" on habeas review, as AEDPA requires deference to the state court's ruling. *Premo*, 562 U.S. at 122; *accord Santone v. Fischer*, 689 F.3d 138, 154 (2d Cir. 2012). Thus, on habeas review, "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* (citing *Padilla v. Kentucky*, 559 U.S. 356, 371, (2010)).

The "doubly deferential" *Strickland* standard applied to habeas review of claims of ineffective assistance of trial counsel also applies to claims of ineffective assistance of appellate counsel. *Woods v. Etherton*, 578 U.S. ---, ---, 136 S. Ct. 1149, 1151–52 (Apr. 4, 2016); *Smith v. Robbins*, 528 U.S. 259, 287–288 (2000). Thus, for a petitioner to establish that the petitioner received ineffective assistance of appellate counsel, the petitioner must establish that appellate counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," and "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief" on the specific issues, "he would have prevailed on his appeal." *Smith*, 528 U.S. at 285.

### 1. Petitioner's appellate counsel's failure to raise the jury-charge claims was not ineffective assistance

Petitioner argues that his appellate counsel was ineffective for failing to argue on direct appeal that the Trial Court erred in instructing the jury and that Petitioner's trial counsel was

ineffective for failing to object to or otherwise challenge the allegedly erroneous jury instructions. (Pet. 7–11.)

To succeed on an ineffective assistance of counsel claim based on a trial counsel's failure to object to jury instructions, a petitioner must show that the trial counsel's failure to object "fell below an objective standard of reasonableness" and show prejudice — that the outcome of the trial would have been different absent the allegedly deficient representation. *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 688–89). A petitioner faces an "especially heavy burden" in attempting to prove prejudice on the basis of an allegedly erroneous jury instruction. *Waddington v. Sarasud*, 555 U.S. 179, 190–91 (2009) (internal quotation marks omitted); *accord DelValle v. Armstrong*, 306 F.3d 1197, 1200–01 (2d Cir. 2002). A petitioner must show that the instruction was erroneous and must also show that there was "a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington*, 555 U.S. at 191 (citation and internal quotation marks omitted). "[T]he pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (citation and internal quotation marks omitted). In answering that question, the allegedly erroneous instruction must not be judged in isolation, "but must be considered in the context of the instructions as a whole." *Id.* (citation and internal quotation marks omitted). A trial counsel's failure to object to legally correct jury instructions does not constitute ineffective assistance. *United States v. D'Agostino*, 638 F. App'x 51, 54–55 (2d Cir. 2016); *Hernandez v. Bennett*, 129 F. App'x 642, 644 (2d Cir. 2005).

The language of the indictment and the trial transcript confirm that the Trial Court erroneously instructed the jury on the charge of criminal use of a firearm in the first degree, but

the error fails to rise to the level of a constitutional violation when viewing the instructions as a whole. New York Penal Law section 265.09(1) states:

> A person is guilty of criminal use of a firearm in the first degree when he commits any class B violent felony offense . . . and he either: (a) possesses a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged; or (b) displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.

New York Penal Law section 265.09(1)(a)-(b). Regarding the charge of criminal use of a firearm, the indictment accused Petitioner of:

> the crime of Criminal Use of a Firearm in the First Degree, an Armed Felony, committed as follows: The defendant, on or about October 3, 2004, in Suffolk County, committed a Class B violent felony offense and possessed a loaded deadly weapon, from which a shot, readily capable of producing death or other serious injury may be discharged.

(Indictment at 2.) The indictment uses the language of subsection (a) of the relevant statute. However, the Trial Court instructed the jury that:

> the indictment charges the defendant with the crime of criminal use of a firearm in the first degree. Under our law, a person is guilty of criminal use of a firearm in the first degree when he commits any class B violent felony offense and he or she displays what appears to be a pistol, revolver, rifle, shotgun, machine gun, or other firearm.

(Tr. 565:13–21.) While Petitioner was indicted under subpart (a) of the statute, the jury was instructed on subpart (b).

Nevertheless, the Trial Court's error does not to rise to the level of constitutional deprivation. Petitioner does not present any evidence that he would not have been convicted of this charge but for the erroneous instruction. In addition to criminal use of a firearm and petit larceny, the indictment also accused Petitioner of "[a]ssault in the first degree, committed as follows: [t]he defendant, on or about October 3, 2004, in Suffolk County, with intent to cause

serious physical injury to Maurice Brown caused such injury by means of a deadly weapon."
(Indictment at 2.)  Instructing the jury on the assault charge, the court stated: "[d]eadly weapon
means any loaded weapon from which a shot readily capable of producing death or other serious
physical injury may be discharged."  (Tr. 564:9–12.)  The assault-charge language mirrors the
language used in the indictment regarding criminal use of a firearm in the first degree, and
captures the jury instruction the Petitioner should have received on that charge.  In convicting
Petitioner of assault as described in the indictment and the jury instructions, the jury necessarily
found that Petitioner caused an injury, or used "a loaded deadly weapon, from which a shot,
readily capable of producing death or other serious injury may be discharged."  New York Penal
Law § 265.09(1)(a).  Therefore, while the trial court erred in its instructions to the jury,
Petitioner fails to show that the error relieved the state of "its burden of proving every element of
the crime beyond a reasonable doubt."  *Waddington*, 555 U.S. at 191.

As the jury-charge claim is procedurally barred and Petitioner fails to establish cause and
prejudice to overcome the procedural bar, Petitioner is not entitled to relief on the jury-charge
claim.[3]

### 2. Petitioner's appellate counsel's failure to raise the claim of ineffective assistance of trial counsel based on the alleged plea-offer was not ineffective assistance

Petitioner argues that his appellate counsel was ineffective because his appellate counsel
failed to raise on direct appeal the ineffective assistance of trial counsel claim based on the
failure of Petitioner's trial counsel to inform Petitioner of an alleged plea offer.  (Pet. 10–11.)

_____

[3]  Because Petitioner cannot establish prejudice to overcome the procedural bar, Petitioner's jury-charge claim also fails on the merits.  *See Strickler v. Greene*, 527 U.S. 263, 295–96 (1999) (holding that the petitioner's failure to establish prejudice to overcome a procedural bar on his underlying claims — i.e., that but for counsel's errors the outcome of the trial would have been different — necessarily establishes that the underlying claims fail on the merits).

As with the jury-charge claims, Petitioner fails to establish prejudice resulting from his appellate counsel's alleged ineffective assistance in failing to raise the plea-offer claim on direct appeal, and therefore cannot overcome the procedural bar.

"During plea negotiations, defendants are entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citation and internal quotation marks omitted). A defendant's "counsel has the duty to communicate formal plea offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). "To establish *Strickland* prejudice, . . . a defendant[-petitioner] must show that the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163 (citation omitted). When the alleged prejudice is that the petitioner stood trial even though he would have accepted a plea offer, the petitioner must establish that:

> there is a reasonable probability that the plea offer would have been presented to the [trial] court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164.

Petitioner's plea-offer claim fails because Petitioner has presented no evidence that the state offered him a plea, which Petitioner's trial counsel failed to present to Petitioner. The only evidence that Petitioner presents to support his claim is a letter from a staff attorney at the Suffolk County Legal Aid Society, who informed and advised Petitioner that:

> You are charged with a class "B" violent felony, which carries a maximum penalty of [twenty-five] years and a mandatory minimum [of] [eight] years determinate state imprisonment, your plea bargain minimum is [five] years determinate state

> imprisonment, a class "C" felony.  I vigorously urge you to consider the other options we previously discussed in conference.

(Pet. Exs. Part 1 at 18.)  The staff attorney further advised Petitioner that he was under the erroneous belief that his "oral and written statements w[ould] be suppressed at a pre-trial hearing."  (*Id.*)  Even if the Court accepts Petitioner's assertion that the letter evidences a plea offer from the state, the fact that the letter was addressed to Petitioner and discussed matters to be decided at a pre-trial hearing undermines Petitioner's assertion that the state presented a plea offer to Petitioner's counsel that Petitioner's counsel failed to present to Petitioner; the letter informs Petitioner of the alleged plea offer.  Therefore, Petitioner cannot establish any prejudice resulting from his trial counsel's alleged failure to inform  him of a plea offer from the state.  *See Burt v. Titlow*, 571 U.S. ---, ---, 134 S. Ct. 10, 17 (2013) (reversing a court of appeals' decision granting a petitioner habeas relief on a plea-bargaining claim because the "absence of evidence" that the petitioner's counsel provided constitutionally deficient advice "cannot overcome [*Strickland*'s] strong presumption"); *Rodriguez v. United States*, 679 F. App'x 41, 44 (2d Cir. 2017) (denying a federal petition for a writ of habeas corpus because the record reflected that the petitioner's counsel "sufficiently both communicated the terms of the plea to [the petitioner] and advised him about it"); *Purdy v. United States*, 208 F.3d 41, 43–44, 49 (2d Cir. 2000) (holding that the petitioner failed to establish that he received ineffective assistance of counsel where he was advised of the evidence against him and the possible minimum sentence if he pled guilty, but nevertheless proceeded to trial).

Accordingly, because Petitioner's plea-offer claim is procedurally barred and Petitioner fails to establish cause and prejudice to overcome the procedural bar, Petitioner is not entitled to habeas relief on the plea-offer claim.[4]

---

[4] *See* note 3, *supra*.

**III.  Conclusion**

For the foregoing reasons, the petition for a writ of habeas corpus is denied.  No certificate of appealability shall be issued.  *See* 28 U.S.C. § 2253.  It is further certified pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: October 13, 2017
        Brooklyn, New York